### Capital Impact Corporation v. Alasdair T. Munro and Marguerite L. Munro

[642 A.2d 1175]

No. 91-116

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 17, 1992

Motion for Reargument Denied May 3, 1994

*Frederick G. Cleveland* of *McKee, Giuliani & Cleveland*, Montpelier, and *Ann S. Duross, Colleen B. Bombardier*, and *Jeannette E. Roach* (Of Counsel), Washington, D.C., for Plaintiff-Appellee.

*Harriet Ann King* of *King & King*, Waitsfield, for Defendants-Appellants.

**Johnson, J.** Alasdair and Marguerite Munro appeal from a decision of the Washington Superior Court allowing foreclosure on their Waitsfield home. We affirm.

Alasdair Munro was a principal in Munro, Jennings & Doig Associates, Inc. (MJD), a real estate development company that operated in Connecticut after 1983. In 1985, MJD borrowed $250,000 of working capital from Capital Impact Corporation (Capital), a small business investment corporation in Connecticut. The Munros guaranteed the full amount of the debt and executed a mortgage deed on their house in Waitsfield. In addition to other security interests, the loan was secured by a mortgage on a condominium unit partly owned by the Munros in Warren, Vermont, which mortgage Capital subsequently subordinated to another lender. In April, 1986, Capital lent an

additional $100,000 to MJD, secured by assets of the company and additional property. This additional loan was not secured by the Munros' house.

MJD defaulted on the entire indebtedness in 1986. Capital brought the present foreclosure action, and the trial court granted its petition. The court denied defendants' request for permission to appeal pursuant to V.R.C.P. 80.1(m) and denied their motion to reconsider. The present appeal followed.

■  Because the trial court denied defendants' request to appeal, a preliminary issue is the jurisdiction of this Court to consider the appeal under 12 V.S.A. § 4601, which states: "When a judgment is for the foreclosure of a mortgage, permission of the court shall be required for review." We held in *Vermont National Bank v. Clark*, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991), that:

> Our longstanding rule on discretionary rulings by the trial court is that they will not be disturbed unless an abuse of discretion is clearly shown. Abuse of discretion requires a showing that *the trial court has withheld its discretion entirely* or that it was exercised for clearly untenable reasons or to a clearly untenable extent. (Emphasis supplied.)

Here, the trial court did not indicate its reasons for denying permission to appeal. While the lack of an explanation from a trial court will not trigger automatic review, the present record leaves us unable to evaluate the court's reasons for denying permission to appeal. We therefore consider the instant matter, notwithstanding the trial court's denial under Rule 80.1(m) and § 4601.

Defendants' central argument is that Capital's president, Kevin Tierney, had promised to enforce the instant mortgage only as a last resort and only after Capital had pursued other security. The trial court found that Tierney had made the following statement during a deposition:

> I told both Addie and Sandy [Defendants] that to the extent they defaulted on the Capital Impact loan that in consideration for the residences being a requirement of my collateral base, that I would attempt to liquidate corporate or business assets first in a commercially reasonable fashion and then to the extent that there was a deficiency then I would look to their homes. That was not my objective to go after their homes first and in the event of a problem and I would try to work with them within the limits of the collateral that I had.

Tierney, in response to another question, stated that the mortgages on defendants' residence and a mortgage on that of another MJD principal were his "ultimate safety net."

The court concluded that "Mr. Tierney's statement[s] were a prior parol promise and his stated promise was not embodied in any of the written contracts that constitute this loan guaranty transaction between plaintiff and defendants." The court also ruled that there was no evidence "from which it could conclude that the promise of Mr. Tierney was made with the intention not to perform it." These rulings were not an abuse of the court's discretion. In the absence of fraud in the inducement, the written agreement superseded prior discussions or understandings of the parties. *Big G Corp. v. Henry*, 148 Vt. 589, 594, 536 A.2d 559, 562 (1987). Mere promises to act in a certain way in the future do not constitute fraud. Defendants do not explain what evidence would tend to show that Tierney's words were false when spoken. Default was not a certainty when the statement was made, and it does not appear that at the time the loan was made and the guarantee and mortgage given that anyone could foresee the circumstances of the default—the availability to Capital of other valuable collateral, the market for such collateral, and the financial condition of Capital itself and the demands of its own creditors.

We have held that "[a] future promise may be fraudulent when it is a part of a general scheme or plan, existing at the time, to induce a person to act, as he otherwise would not, to his injury." *Gramatan National Bank & Trust Co. v. Beecher*, 121 Vt. 39, 46, 146 A.2d 246, 251 (1958). Defendants allege such a "scheme to defraud," but the "scheme" is a recapitulation of other arguments: first, a repeat of the fraud defense based on Tierney's statements prior to execution of the guarantee; second, a contention that subordination by Capital of its interest in the condominium mortgage was improper; and lastly, reference to a misapplication of funds by Capital that should have been credited to repayment of the note, characterized by defendants as a misappropriation. The trial court found that the misapplied funds were subsequently credited as required. The court also found that Marguerite Munro agreed to the subordination at the inception of the loan, and that the subordination resulted in the infusion of new capital into Munro & Jennings, a partnership in which defendant Alasdair Munro had an interest. Not only do these disparate theories fail individually, but they fail to reflect a scheme to defraud. In sum, the case for intentional fraud at the time the mortgage was given is weak,

and it was well within the trial court's discretion to conclude that no fraud was proven.

Defendants argue extensively that the court erred in excluding the Tierney statement under the parol evidence rule. Although the court applied the parol evidence rule and stated that it was excluding this evidence, we need not reach the question of whether its ruling was correct, because it is clear that the court considered the statement in detail in determining whether or not defendants' undertaking had been induced by fraud. Hence, the application of the parol evidence rule was academic in this nonjury case.

■ Defendants argue that there was a fiduciary relationship between Tierney and the defendants, but there was no showing on the record of anything but a debtor-creditor relationship between defendants and Capital. There had been prior business relations between the parties, specifically services performed by MJD for Capital or a customer of Capital. In order for Capital or its officers to have become fiduciaries, the relationship had to ripen into one in which defendants were dependent on, and reposed trust and confidence in, Capital in the conduct of their affairs. Compare *Griffin v. Griffin*, 125 Vt. 425, 438, 217 A.2d 400, 410 (1965) (fiduciary relationship arose where lender's president was attorney for signer of promissory note). However personally friendly Tierney and the Munros might have been, Capital was simply a lender and the Munros the guarantors of a clearly documented loan made at arm's length. The trial court did not err in declining to find a fiduciary relationship.

*Affirmed.*

## On Motion for Reargument

In their motion for reargument, defendants allege four points of law overlooked or misapprehended. The first three points do little more than repeat their argument that Capital, through the representations of Kevin Tierney, defrauded them through false promises and misrepresentations as to the liquidity of other collateral being used to secure the loan. Defendants correctly point out that the trial court did not find that Capital's subordination of the condominium mortgage resulted in an infusion of new capital into MJD. But the court's principal point—that Marguerite Munro agreed to the subordination at the outset—remains correct whether or not the subordination resulted in any benefit to her. The court's conclusion fully and adequately addresses defendants' argument that the subordination

was fraudulent, either at the time the $250,000 note was executed, or at the time the subordination actually occurred. The absence of a benefit to Marguerite Munro does nothing to advance the theory of fraud.

Finally, defendants request a response to the argument alleging a lack of good faith and fair dealing. Since this case was decided, this Court has held that "[t]he implied covenant of good faith and fair dealing exists to ensure that parties to a contract act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Carmichael v. Adirondack Bottled Gas Corp. of Vermont,* 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) (quoting Restatement (Second) of Contracts § 205 comment a (1981)). The trial court found Mr. Munro, as a principal of MJD, to be experienced in real estate development, and that MJD possessed "a fair amount of real estate financing and development acumen." Contrary to defendants' characterizations, Tierney did not make an absolute and unqualified promise to Mr. Munro; Tierney represented that he would "attempt to liquidate corporate or business assets first in a commercially reasonable fashion." The trial court found that Capital had commenced foreclosure proceedings on commercial properties, from which Capital stood to realize little. Absent evidence that Capital could have liquidated other business assets in a commercially reasonable manner, Capital did not upset any justified expectations. Therefore, defendants' motion for reargument is denied.