**John A. LYDDY v. Katherine Landes LYDDY**

[787 A.2d 506]

Nos. 00-418 & 00-496

September, 19, 2001. This matter involves two consolidated appeals, the first from the family court's order granting defendant mother sole parental rights and responsibilities over the parties' child after plaintiff father absconded with the child and failed to appear for the final divorce hearing, and the second from the court's order denying his motion to reopen the divorce proceedings. Father challenges the court's decision to go forward in his absence, contends that the court failed to assess the evidence fairly and make objective findings, and further faults the court for denying his motion to reopen without first holding a hearing. We find no error and, therefore, affirm both orders.

The parties were married in 1997, and their son was born later that year. They separated in February 1999, and father filed for divorce shortly thereafter. Voluminous motions were filed and several hearings were held between March 1999 and August 2000. A temporary order gave father parental rights and responsibilities over the parties' child approximately seventy percent of the time. On June 8, 2000, the parties were notified that the final divorce hearing would take place on August 22. On August 8, the court held a status conference to assure that the parties would be adequately prepared for trial, particularly considering that father was acting pro se at the time. The court informed the parties that a full evidentiary hearing on all issues would take place on August 22, unless the parties settled the matter in a manner satisfactory to the court. Two days before the scheduled final hearing, father failed to transfer the parties' child to mother as provided under the terms of the temporary order. On August 22, father failed to appear at the final hearing. As it turned out, father had taken the child to Texas, apparently because he feared losing custody of his son.

After mother made an oral counter-claim for divorce, the court proceeded without father, taking testimony from mother and Dr. Lawrence Bart, who had performed the court-ordered family forensic evaluation. Following the hearing, the court awarded mother parental rights and responsibilities, and suspended all contact between father and the parties' child pending further hearing. The court followed up its August 22 final order with a September 13 order adopting supplemental findings submitted by mother's attorney. Soon thereafter, father retained counsel, who prevailed upon him to return to Vermont with the parties' child. Having returned to Vermont, father first filed a September 19 emergency motion for reestablishment of contact with his son, which was denied. On September 21, father filed a notice of appeal from the final divorce order, and on September 26, he filed a motion for a new trial, an amended judgment, and/or relief from judgment. The family court denied the motion in an October 10 order, which father appealed. Father's appeals were consolidated by order of this Court. On appeal, father argues that the family court erred (1) by allowing mother to proceed on her counterclaim made for the first time at the final hearing without giving him an opportunity to respond, (2) by adopting verbatim biased and erroneous supplemental findings proposed by mother, (3) by failing to conduct a complete and balanced analysis of the relevant statutory criteria in making its custody award, and (4) by denying, without first holding a hearing, his motion to reopen the divorce proceedings.

Father first argues that the family court erred by allowing mother to file an oral counterclaim and go forward at the final hearing when he failed to appear. Father concedes that mother was entitled to file a counterclaim at any time before final judgment under V.R.F.P. 4(f), but claims he was entitled to notice

and an opportunity to file an answer under V.R.C.P. 12(a)(2). There was no error.

We agree with father that, generally, the subject of a cross-claim is entitled to notice and an opportunity to file an answer. Given the facts of this case, however, father was not prejudiced by the lack of notice. The family court proceeded on the theory that father had brought the very same issues to the court, which were set for trial, that were raised by mother's counterclaim — namely claims for divorce and custody of the couple's child. Other than mother's request for attorney's fees,[1] no issue went forward on the day of the hearing of which father had not already had notice, and upon which he had prayed for the same relief. Thus, father suffered no harm because of an alleged lack of notice that the court would go forward on the very issues he had raised himself. Indeed, the matters at issue in this divorce were not new to the parties or the court. The divorce proceedings were contentious, and the parties had been before the court on numerous occasions leading up to the trial, including several evidentiary hearings on temporary custody, motions for protective orders, and motions for contempt. At a status conference held just two weeks before the August 22 hearing, the family court informed the parties that it intended to proceed on a full evidentiary hearing concerning all issues. Those issues did not change in two weeks. Father's complaint is really that, in his voluntary absence, mother was given custody.

Moreover, in light of the facts before the family court on the day of the hearing, the court had little choice but to go

---

[1] Father has not claimed, either in his post-trial motion or here on appeal, that the award of attorney's fees to mother was unwarranted; rather, he argues only that he was not given notice of the claim.

forward. It made the following findings: (1) although father had notice of the final divorce hearing and had appeared at a pretrial status conference just two weeks earlier, he failed to appear at the scheduled final hearing and gave no reason for his nonappearance; (2) father had failed to return the parties' son to mother two days earlier, as required by court order, and all efforts to reach him by telephone were unavailing; and (3) in light of the expert forensic testimony of Dr. Bart, father's behavior had placed the welfare of the child at significant and immediate risk. Although father claims that there was no reason to proceed that day and every reason to wait and find out "what happened and why," we cannot ignore that, on the day of the hearing, no one knew where father and the child were, or whether they would ever be seen again. At the very least, the family court was required to issue a custody order suspending father's parent-child contact and giving custody to mother so that a law enforcement officer could take the minor into custody. Under these circumstances, it is disingenuous for father to claim that the family court went too far in considering the issues before it.[2]

Father's second claim of error is that the family court erred by adopting, verbatim, the biased and erroneous supplemental findings, conclusions, and order proposed by mother's attorney. Father acknowledges that V.R.C.P. 52(a)(2) does not bar verbatim adoption of proposed findings as long as they are not clearly erroneous, but contends that some of the findings in this instance were

---

[2] We note that the final order issued by the trial court contemplated further hearing regarding parent-child contact after the return of the child to mother's custody. At oral argument, counsel informed us that an amended order permitting contact between father and son had been entered.

overkill at best and malicious distortion at worst. Before generally addressing this contention, we examine each of the challenged findings.

Father first challenges the court's finding stating that mother was the primary caregiver before issuance of the temporary order, had demonstrated devotion in caring for the child, and was fully capable of assuming primary care of the child. Notwithstanding father's citation of evidence indicating that both father and mother were actively involved in caring for their child following his premature birth, and that mother had acted negligently on occasions while caring for the child in the past, the evidence supported the finding that mother had been the primary caregiver and, like father, was capable of assuming primary care of the child. See *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994) (factual findings are viewed in light most favorable to prevailing party, disregarding modifying evidence). Similarly, father's claim that mother struck him once during an altercation involving the transfer of the child does not undermine the court's finding, which is supported by credible evidence, that mother had demonstrated a strong attachment to the child and given responsible parental care during the divorce proceedings. There was also credible evidence supporting the court's finding that, during the divorce proceedings while father was the primary custodian of the child, father had attempted to exclude mother from aspects of the child's life concerning daycare, medical care, transportation, and other issues.

There are two findings, though, that are not entirely supported by the record. In one, the court found that Dr. Bart testified that father's apparent removal of the child from the jurisdiction and alienation from mother *will* have a detrimental effect on the child. In fact, Dr. Bart testified that father's actions *could* have a detrimental impact on the

child depending on what he told the child and how long the period of alienation lasted.

In the other, the court expressed concerns about father's mental health because Dr. Bart's evaluation and testimony indicated that there was a *high probability* that father suffers from psychopathology, that he is a predator, and that he is in need of treatment. In his evaluation, Dr. Bart noted that (1) father had responded to psychological tests in a manner that decreased the ability of the tests to provide an understanding of his psychological functioning; (2) father had carefully limited his disclosure during the evaluation, which was apparent from the validity scales of the psychological testing; (3) because of the way father responded, it is highly probable that important information about father's personality was suppressed; (4) as a result, Dr. Bart could not tell whether father's behavior in the marital relationship and with his son was that of a normal individual under stress or one with a serious disturbance who exploits others and feels little remorse for the damage done; (5) the latter personality was consistent with comments that mother and a social worker made about father, but ultimately it was not fully possible for the examiner to know the truth behind father's guarded presentation. Dr. Bart also discussed father's use of pornography from the Internet, but determined that there was no reason to link that use to any probability of sexually inappropriate behavior. At the final hearing, Dr. Bart testified that there was a *possibility* that father is a predatory individual who is deviant in some important ways. When the court asked Dr. Bart how father's apparent abduction of the child would affect his diagnosis, he responded that even mother's worst past acts of negligence toward the child would not support father's presumed belief that he was protecting his son, so that his behavior was more likely caused by his own psychopathology. While acknowledging that he was still not "totally certain," Dr. Bart testified that he "leaned" toward the view that psychopathology was present.

Given the above evidence, a more accurate finding would have noted the *possibility* rather than the *high probability* of father's psychopathology. Indeed, the parties would have been better served by the court culling through the mother's proposed findings, removing the exaggerated statements, and supplementing the proposed findings where necessary. For the most part, however, the findings are accurate and supported by the evidence, and to the extent that they are not, they were not controlling with respect to the court's ultimate decision to award custody to mother and suspend father's right to parent-child contact pending further hearings on what happened with father and the child. Cf. *In re A.F.*, 160 Vt. 175, 178-79, 624 A.2d 867, 869 (1993) (deletion of unsupported finding did not alter support for trial court's decision to terminate parental rights).

The family court was entitled to draw reasonable inferences from the testimony and the report, and err on the side of caution with respect to father's character. See *Kanaan v. Kanaan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995) (trial court is in unique position to assess credibility of witnesses and weight of evidence). It was father who withheld information from the examiner, giving rise to doubts about his true character in the first place. Further, it was father who decided to violate a court order and leave the jurisdiction with his son, which ultimately tipped the scales in favor of mother in what otherwise had been a difficult custody decision. When father's flight with his son was added to his uncertain psychological profile, the situation was sufficiently uncertain to compel the court to consider the worst-case scenario. Therefore, while two of the

findings might have overstated the evidence, the inferences drawn were not so unreasonable as to require reversal. See *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) (we will not disturb factual findings of trial court unless clearly erroneous). Even had the findings exactly tracked the testimony of the psychologist, it is obvious that the family court would have reached the same result. There was no prejudice to father from any errors. See *Pearson v. Pearson*, 169 Vt. 28, 35, 726 A.2d 71, 75 (1999) (family court enjoys broad discretion in a custody matter).

Father claims, however, that his failure to appear and his custodial interference were given too much weight by the trial court, which erred in failing to conduct a complete and balanced analysis required by 15 V.S.A. § 665(b). A review of the transcript refutes father's contention. First, Dr. Bart's report and testimony provided the critical evidence at the trial, and while Dr. Bart leaned "slightly" toward mother, the report and the testimony reflected that both parents had had significant difficulties in their lives and in the marriage, that neither parent was capable of a neutral interaction with each other, but that each appeared to have a loving and caring relationship with their son. The court carefully reviewed with Dr. Bart the degree of alienation of affection of which each party might be capable, given the degree of hostility in their interactions, and was concerned about how to work out a schedule that would minimize hostility displayed in front of the child. This evidence was fairly weighed by the trial court, as evidenced by its questioning. Second, the trial court's questions of Dr. Bart asked him to consider hypotheticals that included, but also excluded, the fact that father had taken his son and failed to appear at the final hearing. While father's actions certainly tipped the balance toward mother in what might

have otherwise been a close case, we cannot agree with father that this factor was given too much weight or was the only fact taken into account. The trial court properly focused on the best interests of the child. See *Bissonette v. Gambrel*, 152 Vt. 67, 70, 564 A.2d 600, 602 (1989) (the focus of the court's decision must be the best interest of the child, not equity between the parties).

Finally, father claims that the family court abused its discretion in denying, without first holding a hearing, his motion for a new trial, an amended judgment and/or relief from judgment. The relevant portion of V.R.C.P. 60 states that a court may relieve a party from judgment because of mistake, inadvertence, surprise, or excusable neglect. V.R.C.P. 60(b)(1). A trial court's decision on a Rule 60(b) motion· is committed to the sound discretion of the court and will stand on review unless the record indicates that such discretion was abused. *Bingham v. Tenney*, 154 Vt. 96, 99, 573 A.2d 1185, 1186 (1990). We cannot say it was an abuse of discretion for the family court not to provide father with a second opportunity to present the evidence that he would have presented at the trial. The reasons for father's failure to appear were not the product of mistake, inadvertence, surprise, or excusable neglect. As the trial court found, father made a deliberate decision, with full understanding, not to run the risk of an adverse decision at trial. That he eventually returned to Vermont with his son may demonstrate that he had second thoughts about his decision not to appear at the final divorce hearing, but it is not sufficient grounds under Rule 60(b) to entitle him to retry his case.

*Affirmed.*

Motion for reargument denied November 2, 2001.