2015 VT 36

# TBF Financial, LLC v. Barrett L. Gregoire and Linda P. Gregoire

[118 A.3d 511]

No. 13-365

Present: Reiber, C.J., Skoglund and Robinson, JJ., and Morris and Zimmerman, Supr. JJ. (Ret.), Specially Assigned

Opinion Filed February 6, 2015

Motion for Reargument Denied March 19, 2015

608

*Hans G. Huessy* of *Murphy Sullivan Kronk*, Burlington, for Plaintiff-Appellee.

*Christopher J. Smart* of *Cheney Saudek & Grayck PC*, Montpelier, for Defendants-Appellants.

¶ 1. **Robinson, J.** Defendants, Barrett and Linda Gregoire, sought to amend or set aside judgments of foreclosure in favor of plaintiff bank based on claims of fraud and misrepresentation.[1] The trial court denied the motions. The bank filed a motion for a finding of default in connection with a post-foreclosure judgment

---

[1] The loans financing the properties were held by RBS Citizens, N.A. at the time the foreclosure actions were filed. In January 2013, TBF Financial, LLC was substituted as a party after it purchased the debt from RBS. Both entities are referred to as "the bank" in this decision.

stipulated order. The trial court granted that motion. On appeal, defendants argue that there was no final judgment so the order could be amended without resort to post-judgment proceedings, and even if it was a final order, the court erred in denying their request for relief and in entering judgment of default. We affirm.

¶ 2. As the trial court noted, the history of these consolidated cases appealed from Washington and Caledonia Superior Courts is unusual and convoluted.[2] The dispute concerns four multi-family rental properties — three in Washington County and one in Caledonia County — that were part of defendants' rental-property business. The bank's loans to defendants were secured by the properties and were cross-collateralized with each other. In March and April 2010, the bank filed foreclosure complaints with respect to the properties. The parties executed a forbearance agreement under which defendants retained. control of the properties as landlords, but the tenants were to pay rent directly to the bank.

¶ 3. In July 2010, the parties stipulated to the appointment of a receiver to collect rent for the bank. The stipulation was executed by the parties and signed by the court. The stipulation enjoined defendant Barrett Gregoire from interfering with collecting rent, and required the receiver to report monthly to the bank and defendants. It did not expressly require any supervision by or report to the court. In August 2010, the parties stipulated to increase the receiver's reimbursement apparently because the receiver was required to collect rents in-person and was responding to more complaints from tenants about the property than anticipated.

¶ 4. In October 2010, the receiver filed with the court a report, which stated that defendant Barrett Gregoire was renting to new tenants and collecting rents and security deposits without turning over the funds to the receiver.[3] Shortly thereafter, the bank filed an emergency motion to enforce the receivership order based on allegations that defendant Barrett Gregoire was substantially interfering with the receivership and engaging in unscrupulous

---

[2] As set forth in more detail below, the underlying facts, stipulations and court orders in the Washington and Caledonia Superior Court actions are substantially intertwined, and the issues on appeal are identical. For that reason, we have consolidated the appeals. V.R.A.P. 3(c)(2).

[3] The trial court noted that, although this report purports to be from the receiver, it was signed and submitted to the court by the bank through its own counsel. This was true with respect to all reports of the receiver filed in this case.

conduct. After a hearing, the court issued a supplemental order, expanding the receiver's authority and placing the receiver in full control of the properties.

¶ 5. In January 2011, the bank notified the court that the forbearance was no longer in place, and that it would proceed with foreclosure. The bank filed the original stipulation to foreclose executed by defendant Barrett Gregoire on April 23, 2010. Over the next few months the parties signed two stipulations resolving various issues arising from defendant Barrett Gregoire's alleged transgressions in connection with the rental properties, including a stipulation in May 2011 pursuant to which Barrett Gregoire agreed that he would stay 100 feet away from all of the apartment buildings, and that he and his agents would have no contact with current or prospective tenants.

¶ 6. On June 27, 2011, the bank submitted an affidavit of amounts due, including the receivership fees. Three days later defendants "conditionally" opposed the bank's final accounting, arguing that the bank had failed to produce all of the underlying documentation. That same day, they filed a motion to enforce a subpoena that defendants had issued to the bank. In the opposition to the bank's accounting, defendants further alleged that the receiver collected excessive fees, noting that the receiver was unusually expensive, traveling monthly from Montana to Vermont for a few days for a fee of $6000 per month in addition to monthly travel expenses of roughly $2000 (which the bank had by that time opted to waive). Defendants argued that the bank had paid out over $90,000 in receivership fees and costs during a time when receivership receipts were not timely applied to real estate taxes and the bank was asserting that receivership income was insufficient to meet expenses. Defendants also claimed that the bank workout loan officer was unqualified to administer the loans, and had been the subject of several successful collection actions, most recently in March 2011 in Montana when a judgment was entered against her on allegations of not paying her rent on a vacation home and removing therefrom personal property belonging to the owner of the home. The bank objected to the subpoena and requested that defendants provide more specific details to support their allegations against the workout officer and receiver.

¶ 7. In resolution of these various discovery-related issues, in July the parties agreed that defendants would withdraw all discovery requests, the bank would provide further information to

support its accounting and draft foreclosure judgment order, and the parties would return to court on August 15, 2011 for a hearing on any objections to expenditures reflected in the bank's accounting. Defendants were required to file any objections by August 8 so that the bank would be able to bring witnesses. Defendants filed a host of general objections to the bank's accounting, arguing, among other things, that the bank had not produced the required information, and that the bank underreported collected rents.

¶ 8. At the August 2011 hearing, defendants' attorney set forth defendants' allegations of misconduct, including claims that substantial receivership funds had been paid to a relative of the bank's loan officer for undocumented accounting and painting services, and that $5000 had been paid from the receivership to a company owned by the bank's loan officer for undefined consulting services. In short, defendants argued that they had reason to be suspicious that someone at the bank was improperly redirecting receivership funds.

¶ 9. The court suspended the hearing to give the parties an opportunity to negotiate. The parties reached what the trial court described as a global settlement of all disputes at that time for the purposes of the foreclosure. This agreement, which was signed by the court and entered as an order ("the August 2011 stipulated order"), contained the following provisions: defendants agreed to withdraw their objections to the amounts claimed by the bank in the four cases; the parties agreed that the court could enter judgment orders and decrees of foreclosure; the parties agreed that public sale of each property could proceed and be confirmed by the court, with no challenges to the deficiency amounts; and the parties agreed that the deficiencies in the four cases would become the basis for a foreclosure of another mortgaged property in New York. The stipulation specifically preserved defendants' ability to challenge the receiver's actions, stating that the foreclosure judgments would "have no preclusive effect as to the accuracy of amounts set forth in the Affidavit of Amounts Due and the expenditures paid by the receiver which may be challenged in a separate action." The court approved the stipulation and entered a final judgment and decree of foreclosure by judicial sale on

August 25, 2011.[4] A certification of nonredemption was issued on October 18, 2011.

¶ 10. The property did not go to auction, however, because in late October the parties entered into a new stipulated forbearance agreement, which the court signed ("the October 2011 stipulated order"). Under this agreement, the public auctions were stayed for one year and defendants were allowed to manage the properties, but were required to make monthly payments toward a new long-term payment schedule. The agreement specified that if defendants failed to make scheduled payments then the bank could file a notice of default with the court and defendants could contest the default by affidavit within seven days. If contested, the stipulation provided that the court "shall determine whether a default occurred and this shall be the only issue to be determined." If no opposing affidavit was filed, or if the court found in the bank's favor in the event that default was contested, the stay would be lifted and the property would go to auction. If, on the other hand, defendants avoided default, the foreclosure judgment and certification of nonredemption would be vacated without prejudice.

¶ 11. The stipulation vacated the receivership and defendants regained control of the properties and reassumed the role of landlord. The stipulation also expressly voided the provision of the August 2011 stipulated order in which the parties had agreed to defer any disputes regarding the accounting, including receiver expenditures, to a separate action after all of the foreclosures sales. Instead, the parties agreed that the foreclosure "shall have preclusive effect as to the accuracy of the amounts due and the expenditures paid by the Receiver, and they cannot be challenged in this action or in a separate action." The October 2011 stipulated order thus resolved the dispute relating to the receiver's expenditures that had been brewing for months.

¶ 12. The bank filed for default in July 2012, representing that defendants had made only one payment under the October 2011 stipulated order. The default was extended by stipulation, but in January 2013, the bank again filed for default, alleging that defendants were behind in their payments by $12,479.72 and were delinquent in payment of taxes. In response, defendants did not

---

[4] In the Caledonia County docket, the judgment of foreclosure was entered on October 5, 2011.

challenge the fact that they were in default on the debt, but asserted that there were misrepresentations in the agreement that led to the stipulation. In particular, defendants made two assertions, which they claimed should excuse the default: first, that the bank had represented that all properties were in good condition with taxes paid, and, in fact, there were various problems with the properties; and second, that the receiver's expenditures were questionable.

¶ 13. Defendants supplemented their allegations with an additional affidavit, which described in more detail defendants' allegations that the bank workout officer and the receiver had colluded to siphon money from the receivership and defraud defendants and the court. Defendants then filed a motion to set aside the foreclosure judgments, the October 2011 stipulated order, and the order discharging the receiver. The bank responded that defendants had failed to make any credible claim in response to the default: the affidavit did not challenge defendants' default, and under the October 2011 stipulated order, the allegations of misconduct were waived.

¶ 14. The court issued a lengthy written order in response to defendants' motions.[5] The trial court concluded that the judgment orders and decrees of foreclosure issued pursuant to the August 2011 stipulated order were final judgments. Treating defendants' request as a motion to set aside the August 2011 foreclosure judgment because of fraud, the court concluded that the motion was untimely pursuant to Vermont Rule of Civil Procedure 60(b)(3), which states that a motion for relief from judgment based on fraud must be filed not more than one year after the judgment.

¶ 15. Considering whether the fraud alleged in this case might be the kind of "fraud upon the court" that would warrant relief from judgment even after one year pursuant to Rule 60(b)(6), see *Godin v. Godin*, 168 Vt. 514, 518-19, 725 A.2d 904, 907-08 (1998), the court analyzed in depth the role played by the receiver in this case. The court explained that while a receiver is typically a neutral party and an arm of the court, in this case neither the parties nor the court treated the receivership as a "true receiv-

---

[5] The order was entered in the Washington County dockets. The Caledonia County court denied defendants' motions in a single-sentence order, citing to the Washington County decision.

ership," and the receiver was not treated as an officer of the court. For that reason, the court rejected defendants' argument that the alleged fraud could be fairly characterized as a fraud upon the court.

¶ 16. The court also held that there were no grounds to allow defendants to avoid the terms of the October 2011 stipulated order. Pointing to the fifteen-month delay between the October 2011 stipulated order and defendants' resumption of management of the property and defendants' allegations about the condition of the property and effort to avoid the terms of that order, the court concluded that any claim for relief from the October 2011 stipulated order was untimely. If the October 2011 stipulated order was a final judgment such that Rule 60 controls, defendants were out of time for the same reasons as with respect to the August 2011 stipulated order. Alternatively, if the court considered the October 2011 stipulated order on the basis of contract law, defendants lost any ability to avoid the contract on the basis of the bank's claimed misrepresentations as to the condition of the properties by engaging in conduct manifesting an affirmance of the agreement over the course of fifteen months. See Restatement (Second) of Contracts § 380 (1981). Because defendants had not challenged their default on the loans pursuant to the terms of the October 2011 stipulated order, the court found default and entered a writ of possession in favor of the bank.[6]

¶ 17. Defendants filed motions to reconsider, which the court denied. Defendants then filed a request for permission to appeal, which was also denied. This Court accepted defendants' request to consider the motions as a notice of appeal, and subsequently granted defendants' request for a stay of the sales.

¶ 18. Defendants' arguments on appeal require us to examine both the August 2011 stipulated order and ensuing foreclosure judgments and the October 2011 stipulated order. With respect to the former, defendants argue that the foreclosure judgments arising from the August 2011 stipulated orders were not final, and could thus be revised pursuant to Vermont Rule of Civil Procedure 54(b) without resort to post-judgment motions. In the alternative, defendants argue that the court abused its discretion in denying relief from the foreclosure judgments. Finally, defend-

---

[6] Separate orders were entered in the three Washington County dockets and the Caledonia County docket.

ants argue that even if the court does not disturb the August 2011 stipulated order and resulting foreclosure judgments, the court cannot find a default and lift the stay pursuant to the October 2011 stipulated order because that agreement is voidable for fiduciary abuse and/or duress, and because defendants should have an opportunity to prove that their performance under that agreement was excused by failures on the part of the bank. We consider these arguments in turn.

## I. Finality of Foreclosure Judgments

¶ 19. ██ Defendants first argue that the foreclosure judgments were not final and therefore could be amended pursuant to Rule 54(b). Whether there was a final judgment is a question of law, which we consider de novo. *In re Estate of Kurrelmeyer*, 2010 VT 20, ¶ 10, 187 Vt. 620, 992 A.2d 316 (mem.) (stating that pure questions of law are reviewed de novo). A final order is one that "end[s] litigation on the merits or conclusively determine[s] the rights of the parties, leaving nothing further for the court to do but execute the judgment." *Town of Randolph v. Estate of White*, 166 Vt. 280, 283, 693 A.2d 694, 695 (1997); see V.R.C.P. 54(a) (defining judgment as "any order from which an appeal lies").

¶ 20. ██ ██ In evaluating whether the foreclosure judgments arising from the August 2011 stipulated order were final, we bear in mind three considerations particular to foreclosure judgments. First, a foreclosure decree is a final judgment even if a right to redeem exists, and even if further proceedings ancillary to the foreclosure itself are contemplated. *Mortg. Lenders Network, USA v. Sensenich*, 2004 VT 107A, ¶ 7, 177 Vt. 592, 873 A.2d 892 (mem.). Second, a party seeking to appeal a foreclosure judgment must seek permission to appeal within ten days "of the date of the entry of the judgment or order to be appealed from." V.R.C.P. 80.1(m). Third, as generally reflected by the above authority, we have recognized a strong legislative policy favoring the finality of foreclosure judgments. See *Woodbine Condo. Ass'n v. Lowe*, 174 Vt. 457, 458, 806 A.2d 1001, 1003 (2002) (mem.) (explaining that Rule 60(b) cannot be used to circumvent requirement of seeking permission to appeal foreclosure decree because of legislative policy promoting finality of foreclosure judgments).

¶ 21. ██ In light of these considerations, we conclude that the August 2011 foreclosure orders were final, unappealed judgments.

*Citibank, N.A. v. Groshens,* 171 Vt. 639, 640, 768 A.2d 1272, 1273 (2000) (mem.) (dismissing appeal from court's denial of motion to reopen foreclosure judgment because of legislative policy promoting finality of foreclosure judgments).

¶ 22. Defendants do not dispute the general rule that foreclosure judgments are final, appealable judgments, but argue that in *this* case the subsequent October 2011 stipulated order effectively canceled the sales, stayed the actions, and indicated that the foreclosure judgments might be vacated. We reject this argument. The parties filed the October 2011 stipulated order well after the expiration of the time for requesting an appeal of the foreclosure judgments. By that time, the judgments were final and could only be set aside pursuant to Rule 60(b). Although the October 2011 stipulated order stayed a public auction, and contemplated a future scenario in which a court might vacate the foreclosure judgments upon the satisfaction of certain conditions, that stipulated order did not itself vacate the foreclosure judgments. In fact, the order expressly contemplated that the foreclosure judgments would remain in place so that the only remaining issue would be defendants' compliance with the new payment plan, and provided that upon default, the court would lift the stay and the property would go to auction. Accordingly, we cannot construe the October 2011 stipulated order as in any way altering the finality of the August 2011 foreclosure judgments.

## II. Rule 60(b) Motion

¶ 23. ▆ Because the foreclosure decrees were final judgments, defendants' only avenue for relief from the foreclosure judgments is Rule 60(b). Defendants argue that the bank's fraud — and in particular, the alleged collusion between the bank's loan officer and the receiver to redirect receivership assets for nonreceivership purposes — supports its request for relief. The trial court has discretion in determining a request for relief under Rule 60(b), and this Court will not reverse absent an abuse of that discretion. *Lyddy v. Lyddy,* 173 Vt. 493, 497, 787 A.2d 506, 513 (2001) (mem.). In evaluating defendants' claims, we accept as true defendants' allegations in their pleadings that the receiver and the bank workout officer colluded to divert funds to relatives and to enrich themselves through excessive fees and expenses.

¶ 24. ▆ Defendants' request for relief rests on their assertion that the receiver engaged in fraud. Among other grounds, a court

may grant relief under Rule 60 for "fraud . . . , misrepresentation, or other misconduct of an adverse party." V.R.C.P. 60(b)(3). A motion based on fraud must be made within one year after the judgment or order was entered. V.R.C.P. 60(b). Because defendants' motion was filed more than a year after the foreclosure judgment was entered, the court correctly ruled that defendants' motion based on fraud under Rule 60(b)(3) was time barred. See *Godin*, 168 Vt. at 517, 725 A.2d at 907 (holding that fraud claim filed six years after date of judgment was time barred).

¶ 25. ■ Under Rule 60(b)(6), relief from judgment may also be granted for "any other reason justifying relief from the operation of the judgment." This rule is designed to "prevent hardship or injustice," but the interest of finality limits when relief is available. *Riehle v. Tudhope*, 171 Vt. 626, 627, 765 A.2d 885, 887 (2000) (mem.). Relief under Rule 60(b)(6) is available only when the proffered basis for relief — in this case fraud — is not encompassed within the other provisions of the rule. *Pierce v. Vaughan*, 2012 VT 5, ¶ 10, 191 Vt. 607, 44 A.3d 758 (mem.).

¶ 26. ■ Although the general rule bars relief from judgment on account of fraud more than a year after a final judgment, defendants invoke a narrow exception for when the fraud in question is fraud upon the court. Rule 60(b) itself recognizes that there is no limit to "the power of a court to . . . set aside a judgment for fraud upon the court." V.R.C.P. 60(b). Fraud upon the court is a narrow doctrine, encompassing only that fraud which "does or attempts to[] defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Godin*, 168 Vt. at 519, 725 A.2d at 908 (quotation omitted). It is reserved for "the most egregious misconduct directed to the court itself" and "must be supported by clear, unequivocal and convincing evidence." *Id.* (quotation omitted).

¶ 27. ■ ■ Even if we accept defendants' characterization of their claim as one of fraud upon the court, we conclude it was untimely filed. In so doing, we make no judgment on the merits of the claim itself. A Rule 60(b)(6) motion must be brought within a reasonable period of time, and the trial court has discretion in determining whether the delay was reasonable. *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 368-69, 543 A.2d 1320, 1323 (1988). Only extraordinary circumstances will justify a

party's failure to seek more timely relief. See *Riehle*, 171 Vt. at 630, 765 A.2d at 889.

¶ 28. Defendants first raised questions about the loan officer and receiver in their June 2011 objection to the bank's accounting. At the August 2011 hearing, defendants laid out their allegations in more detail, and specifically argued that the bank had not provided them the necessary information to investigate the conduct of the receivership more thoroughly. The court was prepared to schedule a hearing on defendants' objections at that time, but defendants instead entered into a settlement agreement pursuant to which they stipulated to the foreclosures, preserving their claims about the alleged malfeasance in the receivership for resolution at another time and in another forum. At the hearing, after the parties' reached their agreement, the court questioned defendant Barrett Gregoire, who confirmed that he had a sufficient opportunity to confer with his lawyer concerning the stipulation and that the compromise agreement was one that he wanted.

¶ 29. Two months later, defendants relinquished those claims altogether in exchange for a second chance to manage the properties, with the possibility of resuming ownership. Despite notice of the potential malfeasance, and multiple opportunities in court, defendants pursued neither their objections, nor their request for discovery to investigate more thoroughly. Instead, they opted to give up those claims, and to treat the foreclosure judgments as preclusive as to the amounts due and expenditures paid by the receiver, in exchange for terms they apparently found advantageous.

¶ 30. ▮▮▮ Defendants did not raise or pursue the fraud claims again until January 2013, when the bank sought to lift the stay on account of defendants' default on the new loan terms. Although defendants provided more detail to support the allegations at that time, as the trial court noted, "the nature of [defendants' January 2013] allegations, though more detailed as to the backgrounds of the workout loan officer and the receiver, all appear to be generally within the scope of [defendants'] earlier objections." In the context of its contract law analysis, the trial court concluded that, as a matter of law, defendants "plainly failed to raise [these] issues within a reasonable time." We agree, and conclude that this conclusion applies with equal force to defendants' request for

relief from judgment. See *Riehle*, 171 Vt. at 627, 765 A.2d at 887 (explaining that Rule 60 is not intended to provide relief from a party's "tactical decision or from some other free, calculated, and deliberate choice of action").

¶ 31. ▪▪▪ We reject defendants' assertion that their delay should be excused because they were pro se during periods of the receivership. First, the record reveals that defendants were represented throughout much of the critical period involved. Counsel entered an appearance in February 2011, and represented defendants throughout the hearings and negotiations leading to the August and October 2011 stipulations. Counsel did not withdraw until December 2011. Further, any period of pro se representation does not alleviate defendants' responsibility to bring their claims to the court in a reasonable time. See *Vahlteich v. Knott*, 139 Vt. 588, 590-91, 433 A.2d 287, 288 (1981) (observing that while this Court affords greater flexibility to pro se litigants, "[t]his does not mean that [they] are not bound by the ordinary rules of civil procedure"). Defendants had full knowledge of the alleged improprieties of the receiver and chose, with the full advice of counsel, to execute stipulations to resolve their disputes with the bank. The court did not abuse its discretion in concluding that defendants were not entitled to relief under Rule 60(b)(6).[7]

### III. October 2011 Stipulated Order and Basis for Default Entry

¶ 32. Under the terms of the October 2011 stipulated order, foreclosure sales were stayed for one year during which defendants were given control over the properties. The stipulated order provides that if defendants fail to make scheduled payments, the bank can file a notice of default and "[t]he Court shall determine whether a default occurred and this shall be the only issue to be determined." Defendants do not challenge the fact that they failed to make payments; rather, they claim that the terms of the October 2011 stipulated order are not enforceable because that

---

[7] Because we affirm the trial court's judgment on the basis of the untimeliness of defendants' motion for relief from the foreclosure judgments, we need not address the question of whether the receiver in this case could properly be characterized as an officer of the court. See *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) ("We agree with the trial court's conclusion, but use a different rationale to reach it.").

agreement was a product of fiduciary abuse and made under duress.[8]

¶ 33. ▮▮ ▮▮ Even accepting defendants' allegations at face value, we conclude that defendants have failed to provide grounds for invalidating the stipulated order. Certainly, where fraud or misrepresentation induces entry into a contract, "the deceived party may seek the remedy of being excused from the contract through rescission, or [may seek] the damages occasioned by the fraud." *Negyessy v. Strong*, 136 Vt. 193, 194, 388 A.2d 383, 385 (1978) (per curiam). That power is lost, however, if the party knows of the mistake and affirms the contract even with knowledge of the misconduct or misrepresentation. The Restatement (Second) of Contracts provides:

> (1) The power of a party to avoid a contract for incapacity, *duress*, undue influence or *abuse of a fiduciary relation* is lost if, after the circumstances that made the contract voidable have ceased to exist, [the party] manifests to the other party [an] intention to affirm it or acts with respect to anything that [the party] has received in a manner inconsistent with disaffirmance.

> (2) The power of a party to avoid a contract for mistake or *misrepresentation* is lost if after [the party] knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, [the party] manifests to the other party [an] intention to affirm it or acts with respect to anything that [the party] has received in a manner inconsistent with disaffirmance.

Restatement (Second) of Contracts § 380 (emphases added).[9]

---

[8] Defendants' arguments do not support the primary relief they seek – an order vacating the foreclosure decrees. Given the final, unappealed foreclosure judgments, the only thing standing between defendants and a public auction is the October 2011 stipulated order reflecting the bank's forbearance and staying sale of the properties. If defendants succeeded in voiding the October 2011 stipulated order on either of the bases alleged, the foreclosures would remain intact and the public sales would proceed.

[9] See also *id.* § 381(1) ("The power of a party to avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost if, after the circumstances that made it voidable have ceased to exist, [the party] does not

¶ 34. ■ Here, the record reflects that defendants had a basis for making claims of impropriety and fraud by the receiver and the bank's loan officer prior to entering the October 2011 stipulated order. The allegedly fraudulent actions could not have induced their entry into the contract because defendants had already flagged the actions in court well before negotiating the October 2011 stipulated order. Having entered into the contract well aware of the alleged fraud, defendants retained no power to avoid the contract based on those allegations.

¶ 35. To the extent that defendants' claims relate to alleged misrepresentations by the bank as to the condition of the properties as of October 2011, as opposed to the bank's role in the alleged fraudulent conduct of the receivership, defendants have likewise forfeited their ability to challenge the agreement. By taking possession of the properties and managing them pursuant to the October 2011 stipulated order, defendants thereby affirmed the contract. Defendants then failed to assert any impropriety, sitting on their claims for well over a year after they were undeniably in a position to assess the properties firsthand.

¶ 36. ■ Defendants assert that their knowledge of the misconduct does not remove their ability to invalidate the October 2011 stipulated order because the bank was a fiduciary of defendants and its abuse of that position through the receiver's actions meant that any contract had to be approved by the court as fair. See Restatement (Second) of Contracts § 173 (explaining that contract between fiduciary and beneficiary is voidable by beneficiary unless it is fair and parties "assent with full understanding of their legal rights and of all relevant facts"). There is no merit to this argument because any fiduciary duties the bank may have had at one time to defendants in this case were terminated prior to the parties' October 2011 stipulation. A borrower-lender relationship is insufficient in itself to create a fiduciary relationship. See *McGee v. Vt. Fed. Bank, FSB*, 169 Vt. 529, 530, 726 A.2d 42, 44 (1999) (mem.) (holding in response to claim that bank breached fiduciary duty by failing to disclose to

within a reasonable time manifest to the other party [an] intention to avoid it."); *id.* § 381(2) ("The power of a party to avoid a contract for misrepresentation or mistake is lost if after [the party] knows of a fraudulent misrepresentation or knows or has reason to know of a non-fraudulent misrepresentation or mistake [the party] does not within a reasonable time manifest to the other party [an] intention to avoid it.").

mortgagors that insurance required by bank had lapsed, that "record revealed nothing but a debtor-creditor relationship between the parties" and fiduciary relationship was not born of such an arrangement). A fiduciary relationship results when the relationship between the parties "ripen[s] into one in which defendants [are] dependent on, and reposed trust and confidence in, [the bank] in the conduct of their affairs." *Capital Impact Corp. v Munro*, 162 Vt. 6, 10, 642 A.2d 1175, 1177 (1992). At the time of the October 2011 stipulation, defendants had been involved in litigation with the bank for a year and a half. The close relationship of trust and confidence necessary to establish a fiduciary relationship did not exist between the parties.

¶ 37. ██ In short, by entering into the contract, and accepting its benefits for well over a year despite their knowledge of the alleged abuse of fiduciary duty and duress, defendants forfeited any ability to avoid the contract on those bases.

¶ 38. Finally, defendants argue that they should have an opportunity to prove that their lack of performance under the October 2011 stipulated order was excused by failures on the part of the bank. The alleged misrepresentations and breaches of the agreement by the bank that defendants contend excuse their performance are the same ones noted above — the alleged fraudulent collusion with the receiver and the alleged misrepresentations concerning the condition of the properties at the time of the October 2011 stipulated order. As explained above, the alleged fraud was known to defendants before they entered into the October 2011 stipulation; it cannot constitute a failure by the bank to perform under the agreement that excuses defendants' default. Likewise, the bank's alleged misrepresentations concerning the condition of the properties before defendants entered into the October 2011 stipulation might have provided a basis for avoiding the contract if not for defendants' subsequent affirmation of the contract, but they do not constitute a failure by the bank to perform its duties under the contract and therefore cannot excuse defendants' lack of performance.

*Affirmed.*